UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NO. 08-60238-CIV-MARRA/JOHNSON

ROSE J. SPANO,

    Petitioner,

v.

LORRAINE HOFFMAN, KENNETH
MARVIN, MICHAEL SATZ, and
DAVID SCHULSON,

    Respondents.
_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

THIS CAUSE comes before the Court *sua sponte*.

On February 19, 2008, Petitioner Rose J. Spano filed a "Complaint Under the Civil Rights Act, 42 U.S.C. § 1983," in which she seeks the issuance of a writ of habeas corpus.[1] (DE 1.) While styled as a Complaint under § 1983, the Court construes Plaintiff's filing as a petition for a writ of habeas corpus pursuant to either 28 U.S.C. §§ 2241 or 2254. The Court has reviewed the petition and is otherwise fully advised in the premises.

*Pro se* Petitioner Rose J. Spano ("Petitioner") seeks a writ of habeas corpus to be directed to the following Respondents: Lorraine Hoffman and Kenneth Marvin, attorneys for the Florida Bar; Michael Satz, State Attorney for Broward County, Florida; and David Schulson, Assistant State Attorney for Broward County, Florida ("Respondents"). The facts, as alleged in the

---

[1] "It is from these acts of prosecutorial misconduct by the State Attorney's office and the 'restraints' not share (sic) generally by the public and violation of the Plaintiff's constitutional due process rights that Plaintiff seeks the Petition for Writ of habeas corpus." (Pet. 8-9.)

1

Petition, are as follows: Petitioner was charged by the Broward County State Attorney's Office with "aggravated stalking" in 2000; Petitioner was later acquitted of these charges. (Pet. 4.)

Subsequently, the Florida Bar held a hearing in March 2003 regarding the accusations made against Petitioner in the criminal case.[2] (Pet. 4.) After a hearing before a Florida Circuit Judge, Plaintiff was required by the Florida Bar to "undergo a psychological evaluation and be monitored for one year in her law practice." (Pet. 5.) One year later, Petitioner claims that the Florida Bar filed a motion before the Florida Supreme Court, "falsely asserting that Plaintiff did not comply with the request to undergo a psychological evaluation or be monitored in the practice of law." (Pet. 5.) Contempt proceedings were held before the Florida Supreme Court, and Petitioner received an ex parte suspension order in August 2004. (Pet. 5.) Petitioner states that she "immediately" filed a Motion to Vacate and Terminate the suspension order. (Pet. 5-6.) Nevertheless, "despite filing a Motion to Vacate and Terminate the Suspension Order, Staff Counsel, Marvin, filed another Motion, in October, 2004, stating that the Plaintiff should be disbarred, because she was litigating her Child Modification Support and Child Custody/Visitation Case, pro se, . . . and that she was holding herself out 'as a member of the Florida Bar.'" (Pet. 6.) Petitioner then claims she received an ex parte disbarment order in 2005. (Pet. 6.)[3]

---

[2] Petitioner was admitted as a member of the Florida Bar on May 24, 1985.

[3] While Petitioner's narrative involving the Florida Bar ends at this point, the Court takes note that the story continues. After receiving the disbarment order, Petitioner moved to suspend her disbarment, but that motion was denied. *The Florida Bar v. Spano*, No. SC04-2011 at 1 (Fla. June 15, 2006). Thereafter, the Florida Bar filed another Petition for Contempt before the Florida Supreme Court, alleging that Petitioner continued to "practice law after the date of her disbarment." *Id.* The Florida Supreme Court referred the matter to a referee. *Id.* at 1-2. After two separate hearings, the referee recommended that the Florida Bar's motion for summary

Petitioner also levels several allegations of misconduct against the Broward County State Attorney's Office (the "Office"). She first alleges that the Office "advised police it was acceptable to 'arrest' Plaintiff, on an alleged warrant of Contempt, when none could exist, and while she was in the courthouse attending a hearing before the Court on a civil matter." (Pet. 7.) Petitioner claims that she has "been forced to seek counsel on *unlawful* charges, which have been used to deny, obstruct, and interfere with the Plaintiff's right to work and earn a living in the community." (Pet. 7.) Petitioner also states that the Office "advised police that it was acceptable that two males with no court order, no warrant, to enter Plaintiff's place of business, physically handcuff her, injure her and place her in jail, stating she was flight risk." (Pet. 8.) Petitioner alleges that she is subject to the continued "restraints" of having to appear in court on multiple occasions on false charges. (Pet. 8.)

**Standard of Review**

Under 28 U.S.C. § 2243, a court "entertaining an application for a writ of habeas corpus shall forthwith award the writ . . . unless it appears from the application that the application or person detained is not entitled thereto." This instruction is further clarified by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, which states the following: "If it plainly appears from the petition and any attached exhibits that the petitioner is

---

judgment be granted and that Petitioner be disbarred permanently. *Id.* at 2. Particularly noteworthy is the fact that Petitioner was represented by counsel before the referee. *Id.*

The Court cannot help but note the fact that Petitioner filed a "Petition for Enlargement of Time to File a Writ of Habeas Corpus Due to the Denial of Plaintiff's Constitutional Due Process Rights Under the United States Constitution and Appointment of Counsel to Assist in the Preparation of Habeas Corpus Writ" in a separate case, No. 08-60041-CIV-MARRA. In filing that motion (which the Court summarily denied), Petitioner signed the motion with her Florida Bar number. (*See* DE 1 at 2, No. 08-60041.) Thus, Petitioner continues to hold herself out as a member of the Florida Bar, despite no longer being a member of that organization.

not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." In essence, if the petition is facially insufficient to warrant a writ of habeas corpus, the Court may summarily dismiss the petition. *Bundy v. Wainwright*, 808 F.2d 1410, 1415 (11th Cir. 1987).

The Supreme Court has established that a court should afford a *pro se* litigant wide leeway in pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) (holding allegations of a *pro se* complaint to a less stringent standard than formal pleadings drafted by lawyers). Nevertheless, because she has a law degree and has been licensed to practice law until recently, the Court cannot accord *pro se* Petitioner the advantage of a liberal construction of her claims. *Olivares v. Martin*, 555 F.2d 1192, 1194 (5th Cir. 1977).[4]

**Discussion**

As this Court has previously explained to Petitioner (*see Spano v. Supreme Court of Florida*, No. 08-60041 (S.D. Fla. Jan. 11, 2008)), the writ of habeas corpus ad subjiciendum[5] allows a "swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (quoting *Secretary of State for Home Affairs v. O'Brien*, [1923] A.C. 603, 609 (H.L.) (U.K.)). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure

---

[4] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 & 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

[5] In discussing the writ of habeas corpus ad subjiciendum, Chief Justice Marshall wrote "that when used singly – when we say *the writ of habeas corpus*, without addition, we most generally mean that great writ which is now applied for." *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807) (Marshall, CJ.).

release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Petitions for habeas corpus relief from persons restrained by acts of a state are governed by 28 U.S.C. § 2254. Section 2254(a) states that a "district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground *that he is in custody* in violation of the Constitution or laws or treaties of the United States." Likewise, § 2241(c) also restricts a district court's power to issue the "great writ" to situations where an individual is "in custody."

The "custody" requirement is a jurisdictional prerequisite to a federal court exercising its power to consider the grant of a writ of habeas corpus. *Fay*, 372 U.S. at 430. As one federal court has explained, "custody is the passport to federal habeas corpus jurisdiction. Without custody, there is no detention. Without detention, or the possibility thereof, there is no federal habeas jurisdiction." *U.S. ex rel. Dessus v. Pennsylvania*, 452 F.2d 557, 560 (3d Cir. 1971).

Petitioner is correct that a petitioner need not be subject to a physical restraint in order to be in "custody" for purposes of § 2254. *Duvallon v. Florida*, 691 F.2d 483, 484 (11th Cir. 1982). However, a petitioner must be subject to "significant restraint" on her liberty to satisfy this requirement. *Patel v. U.S. Attorney General*, 334 F.3d 1259, 1263 (11th Cir. 2003). For instance, an individual who is on parole for an unexpired criminal sentence is still "in custody" because of the severe restraints on an individual's ability to travel or take certain employment. *Maleng v. Cook*, 490 U.S. 488, 491 (1989). The restraints on liberty that are generally considered sufficient to meet the custody requirement are restraints on "the putative habeas petitioner's movement." *Williamson v. Gregorie*, 151 F.3d 1180, 1183 (9th Cir. 1998); *see also Leslie v. Randle*, 296 F.3d 518, 522 (6th Cir. 2002). Examples of sufficient restraints on liberty to trigger the "custody"

5

requirement include denying an alien entry into the U.S., a parolee or a convict released on his own recognizance, and mandatory attendance at an alcohol rehabilitation program. *Gregorie*, 151 F.3d at 1183.  All of these examples either require physical presence at a given time or place or interfere with an individual's free movement.

Not all restraints on one's liberty, however, may give rise to the right to the "great writ." For instance, the restraints "incident to the status of a member of the Armed Forces" has been found to be an insufficient basis for a writ of habeas corpus. *U.S. ex rel. McKiever v. Jack*, 351 F.2d 672, 673 (2d Cir. 1965).  Also, the revocation of a license does not place an individual in the "custody" of the state.  In *Westberry v. Keith*, 434 F.2d 623 (5th Cir. 1970), the court held that the petitioner was not in "custody" after being charged a fine and having her right to drive revoked.  *Id.* at 624-25.  Likewise, in *Ginsberg v. Abrams*, 702 F.2d 48 (2d Cir. 1983), the court held that the revocation of a license to practice law also did not constitute "custody," entitling an individual to a writ of habeas corpus.  *Id.* at 49.

Finally, the Court recognizes that "federal courts normally lack jurisdiction over petitions which challenge a conviction with a completely expired sentence." *Unger v. Moore*, 258 F.3d 1260, 1263 (11th Cir. 2001).  The only exception for "expired sentences" are situations where petitioners who are currently incarcerated "may challenge the enhancement of their current sentences by prior convictions for which the sentence has completely expired." *Van Zant v. Florida Parole Commission*, 104 F.3d 325, 327 (11th Cir. 1997).

In the petition, Petitioner appears to have two primary complaints – her disbarment and her alleged harassment by the Office.  With respect to her disbarment, it seems clear to the Court that the loss of the right to practice law does not put restraints on Petitioner's liberty.  Petitioner

6

consistently claims she was subjected to punitive sanctions by the Florida Supreme Court, but these contempt sanctions only involved her ability to practice law – Petitioner's liberty of movement was in no way constrained. As such, her disbarment cannot form the basis of a request for a writ of habeas corpus.

Petitioner also does not qualify for habeas relief for the harassment by the Office. Petitioner alleges that she was arrested on two separate occasions, but Petitioner does not claim that she is currently serving a criminal sentence. Likewise, Petitioner does not claim that she is currently subject to an order of civil restraints on her liberty. Petitioner cannot be "in custody" if her liberty is not being restricted by the state. Her main complaint is that she was "harassed, intimidated, embarrassed, ridiculed, abused, physically abused, assaulted, insulted and defamed" by the Office because she "litigated her own pro se cases and owns and operates a legal support company that follows the law." (Pet. 17.)

While these accusations are disturbing, they do not support a claim for a writ of habeas corpus. Petitioner has not alleged that her freedom of movement continues to be obstructed. "[T]he great and central office of the writ of habeas corpus is to test the legality of a prisoner's *current* detention." *Walker v. Wainwright*, 390 U.S. 335, 336 (1968) (emphasis added). Without evidence (or even an accusation) that Petitioner is currently detained or restricted in her basic liberties, the "great writ" may not issue.

Finally, the Court notes that Petitioner seeks the writ to issue to two staff attorneys of the Florida Bar and two State Attorneys. The writ may only be directed to "the person having custody of the person detained." 28 U.S.C. § 2243. Petitioner's allegations are directed at the Florida Supreme Court for issuing the order of disbarment and at the police for her arrest and

temporary confinement. While these alleged actions may have been facilitated by the individuals named in the petition, the petition for the "great writ" must be directed at the entity that ultimately has custody of the person detained. Thus, even if Petitioner's allegations gave rise to a claim for a writ of habeas corpus, the writ could not issue because Petitioner has named inappropriate parties in her Petition.

**Conclusion**

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Petitioner Rose J. Spano's Petition for a Writ of Habeas Corpus (DE 1) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 28th day of May, 2008.

_____
KENNETH A. MARRA
United States District Judge

Copies furnished to:
all counsel of record